Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 6th Division. The Honorable Justice Sharon O. Johnson presiding, case number 23-0419, Kevin Moore v. S&C Electric Co. Thank you very much. Good afternoon. Good afternoon. I'm Justice Sharon Oden Johnson, and I'm joined by my colleagues, Justice Michael B. Hyman and Justice Sanjay T. Taylor. Will the appellant's attorney please state your appearance for the record? Yes, Your Honor. Lisa Longo on behalf of the appellant, Kevin Moore. Okay, and the appellee? Good afternoon. I'm Amy Doering on behalf of S&C Electric Co., the appellee. Okay, welcome. You'll both be given a total of 20 minutes in which to present your argument, with the appellant having the opportunity to reserve five minutes, or whatever you decide, for rebuttal. Typically, most people choose five minutes, but if you want more or less, you're certainly welcome to it. How much time would you like to reserve? I would think five minutes would be enough. Thank you very much. Okay, very well. You may begin. Thank you. There were many disputed facts in this case, which could lead reasonable people, jurors, hopefully someday, to draw different inferences therefrom, and therefore our position is that summary judgment was improper. Let's go to the choice of law issue.  S&C Illinois filed a motion for summary judgment, and in your response to that, you wrote, This honorable court previously ruled Canadian law to apply, and you cited Judge Sheehan's order, January 12, 2021, and then you discussed how Canadian law would apply. You did not raise this argument going defendant by defendant before the trial court, did you? No, because the only other defendant in this case had been previously dismissed by the honorable Judge Sheehan, therefore there was only one defendant in this case. I'm talking about that defendant. I said the summary judgment by S&C Illinois. You did not argue the argument you raised in your brief. Is that correct? If I'm understanding the question correctly, I don't believe that is correct, only because I believe it is the defendant in this case who suggests that plaintiff was now for the first time initiating an argument under the doctrine of deprecage, when in fact that was not the plaintiff's intention. Wait, wait, wait, wait, wait. They raised the issue. I agree. I'm asking you the question that they raised. Did you raise that issue before the trial court? No, Your Honor. Okay, so now you are before us and you raise an issue you didn't raise before. And as you know, we are not a court of first review, we're a court of review. And so why should we even hear this issue when you didn't raise it before the trial court? In fact, you argued the exact opposite, that the law of Canada did apply, which goes against what you're arguing before us. Your Honor, plaintiff's position or appellant's position is and always has been that Illinois law would apply to this case. That's not what you argued before the judge. You could say that now, but you still, we look at the record. Okay, so my question was, why should we consider that issue when you never brought it up below? You waived it. Why should we even hear it? For three reasons. One is, appellant's position is that it was raised in the sense that in all briefs, Illinois law was argued by plaintiff. And therefore, we were presenting that we felt that Illinois law should apply. However, plaintiff did not invoke the doctrine of deprecage because we do not believe that deprecage applies in this instance. The parties in this case do not have a divisible legal issue. For instance, if there was a tort matter and perhaps a matter for injunctive relief, then there would be the doctrine of deprecage that the court would have to follow. It's plaintiff's position that it would be the party that is moving for the law of another jurisdiction outside of the Honorable Courts of Illinois to have the burden to show why the forum law should apply, which was not done here. That's what you argued before the trial court? Before the trial court, before the Honorable Judge Schneider or Judge Sheehan or both, is your Honor's question. No, we're not involved with Judge Sheehan. The appeal has to do with Judge Schneider. I see. Okay. Correct. No, plaintiff did not address the doctrine. Well, that's the question I'm trying to get an answer. And you're saying the answer is you didn't do it because... But that's the effect that you're asking us to do. You're asking us, now you are asking us to cut it up. So what you're saying is that below you said Canadian law applies. Now you're saying Canadian law doesn't apply, Illinois law applies. Aren't you doing what you say you wouldn't do? I don't believe so, Your Honor, because the summary judgment by the defendant did raise issues of Canadian law because defendant's position is that the Canadian law was the law of the case due to Judge Sheehan's ruling. Plaintiff disagreed, but obviously I was at least position was that we needed to respond to that argument on why Canadian law would also present a material issue of fact. So plaintiff did respond to defendant's motion for summary judgment under Canadian law and also posited Illinois law with the Forsyth case governing. But we do not contend that we are asking the court to do anything different. We don't believe that the court... Well, the court would first have to find that there's a conflict of laws and that there would have to be the parsing of issues. Plaintiff's position... ...conflict between how this would be handled under the issue of tort, the negligence... Well, we're not talking about negligence, we're talking about construction negligence, how that would be handled under Canadian law versus Illinois law. Isn't there a difference? Well, yes, yes, there is a difference. Yes. Okay. But what you're asking us to do is treat one defendant different than another defendant with regard to what law applies? No, plaintiff was always asking, even with the Canadian defendant, that Illinois law should apply. No, no, no. The judge ruled already on that issue. That issue was ruled on. Judge Sheehan ruled on it. And you even said, I don't want to keep repeating it, but right, you even said that she ruled and you discuss how Canadian law applies. And now you're before us and you're making a completely different argument. Well, respectfully, I guess appellant's position is that it's not a different argument. Judge Sheehan, and I think you're exactly correct that the wording was Judge Sheehan ruled and it was in her ruling. Therefore, it is a ruling. However, her discussion of the conflict of laws took place in her discussion of forum non-convenes. The Honorable Court had already determined that as a matter of law, she had no personal jurisdiction and therefore no ability to go on further. However, the court, and she wrote, felt compelled to explain that had she found personal jurisdiction, she would have gone on to the forum non-convenes, public and private factors, and she also would have determined that Canada was the more convenient forum. And the discussion of the conflict of laws came in under Judge Sheehan's discussion of the public factors and that she would have ruled that Canadian law would have applied. And therefore, that bolstered her decision that it would have even had she had personal jurisdiction and she even used the word hypothetically in her ruling that then she would have applied Canadian law, which would have made the Canadian forum more convenient. So, so while it was her honors ruling, I believe it could be analogous to dicta. She was not ruling that that was the law of the case for the Chicago company. She was simply ruling on the matters before her dealing with the Canadian company in finding that she had no personal jurisdiction. But even if she did, she would have ruled that under the theory of forum non-convenes, she would have found the Canadian forum to be more convenient for the court, for the parties, and that under that analysis, the conflict of laws came into play under Judge Sheehan's ruling. But Judge Schneider adopted that analysis for this case. And as to that, you did not complain below. And now on appeal, you are raising the issue for the first time. Ms. Longo, let me just jump in real quick. Yes, sir. It's a follow on question to Justice Simon's question. That's just a spoon for sake of argument that he forfeited this issue. Forfeiture binds the parties, but not the court. So why should we excuse the forfeiture? Well, thank you, Your Honor. And that was going to be one of my next points, that this court can issue or can consider issues not properly preserved to ensure a just result. So if the court does deem that plaintiff waived that argument, under that circumstance, I would request the court to consider it because summary judgment is such a drastic measure. And it should be strictly construed against the moving party in favor of the non-moving party, which would have been the plaintiff in the circuit court. But that would mean that any time an appeal from a summary judgment is taken, that because it's such a drastic measure, that we forgive every forfeiture. It can't be that. There's got to be something more to your argument. Well, of course, I guess, again, though, plaintiff or appellant's argument is and remains to be that Depakaj was something brought up by the defendant that claims that plaintiff is arguing. And even considering Justice Hyman's questions to me, I believe that our argument is that is not the case. And even if the court believes that Judge Schneider properly ruled under the choice of laws, it's plaintiff's position that Her Honor did not consider the principles of Section 6 under the choice of laws. And therefore, this court would be allowed to reverse that determination by Judge Schneider because the proper methodology of testing the significant relationship against the 145 factors and including the Section 6 principles, that there would be a very different outcome. The principles that were not discussed in Judge Schneider's ruling involve all of the reasons why this case would more properly be in Illinois, because there are two businesses that we're dealing with plaintiff's employer, who's an Illinois corporation, defendant, an Illinois corporation, the policies of the Illinois forum, the ease and determination of the application of the law to be applied. We would be essentially having a one count, one defendant's lawsuit on a personal injury claim with one issue, which is the tort. And we would be applying Canadian law, which true, the undisputed fact is that the incident incidentally occurred in Canada. But the appellant's position is that all of the events and conduct by defendant's Illinois company occurred in Illinois. So the duty was created here, the breach of that duty was created here. And the fact that this defendant is the parent company is not sufficient to have them immune from liability. And those questions of material fact should be viewed. And in the conflict of laws, it most certainly should be viewed in the policies set forth in Section 6, which is the cornerstone of the restatement. What is your principal case that you're relying on for that proposition? For, well, ESSER, I guess, versus McIntyre is one of the main cases. Let's talk about ESSER. Yes. If ESSER doesn't apply, do you lose? I'm sorry, Your Honor? ESSER does not apply. If we rule that ESSER is inapplicable here, do you lose? I don't believe so. Because under the strict... Let's go to that next. Okay. So let's see whether ESSER applies. Now, you say it applies. But in ESSER, the popcorn was dropped on the floor by an Illinois resident. In the case before us, if we were going to match up the facts, the popcorn was dropped by a Canadian driver. That's why he was in the room. They were having a party and he dropped the popcorn. Now, that's the difference because you had Illinois and Illinois in ESSER. But here we have Illinois and we have Canada because of the truck driver. So with that... And tell me why I'm wrong. I mean, to me, that is a distinction that makes ESSER inapplicable. I believe it is still applicable because ESSER does guide us on the Section 6 restatement under all of the policy issues that must be considered, as well as the four factors of where the incident occurred, where the conduct occurred. And I believe that the history of the restatement is such that it used to be that that issue would be the beginning and the end of the inquiry. Exactly what Your Honor said. It occurred in Canada and it was done by a Canadian driver. Therefore, the inquiry ends. But that is not what the restatement says because it could lead to, I don't know if they would be absurd results, but as I do believe it would be here where we would have something that did occur in Canada. But what our complaint and the construction negligence against the defendant is wholly about the acts and omissions that the defendant did here in Illinois. That is where the entire relationship between the plaintiff and the defendant existed, which led to and was then a proximate cause of the popcorn spilling or the running over in Canada. So I believe that that is what could be a distinguishing factor, I believe, to Your Honor's point about ESSER. But I think ESSER guides in the principles of the methodology that the court must go through to, A, determine if there is a conflict and then determine which law would apply and then test that decision against the factors and the principles under the restatement, Section 145 and Section 6 to determine the significant relationship. And I think under that analysis, the significant relationship here most certainly would be Illinois, and it would behoove Illinois courts to impose Illinois law on the matter because of all the policy principles to want Illinois companies to feel free to do work in other jurisdictions. And so I believe that we disagree with that analysis. What is it? Then ESSER doesn't apply. Do you have a backup argument? Well, again, I rely on the restatement in and of itself and the history of it and why that inquiry should not end with just where the incident occurred and where the conduct occurred, which conduct in our position stems all the way back to Illinois, the conduct that was performed in Illinois. But the conduct was performed in Canada. I mean, this was all in Canada. The truck driver was in Canada. He's the one who instructed Mr. Moore to unfortunately step in the wrong spot and so forth. I mean, what happened with this company from Illinois was not part of the contract, and they removed themselves early on from this case. I mean, the contractor was doing the Canadian company and reliable. So, you know, I read the restatement and I read the cases and I don't see how the restatement would say that Illinois would trump Canadian law. So we have to look at it under Canadian law. And if we let's say for sake of argument, if we do look under Canadian law, do you lose? No, I do not, because under Canadian law, their primary factors are foreseeability and proximity. Foreseeability is met from our perspective because it is not a very narrow foreseeability of that exact moment in that exact instance of the running over. If that were the case, I don't believe any personal injury case would survive because all defendants would claim it was unforeseeable. It is more in a general terms, whether or not the generally whether the injury or the harm could be foreseen. Not specifically would a defendant think that a plaintiff was going to be at heights, that a boom truck would be used, that the boom truck driver would instruct the plaintiff to walk in the contrary position to traffic. That's a more narrow view that the law under Canada does not suggest. The law is clear that the general or that the foreseeability is more generally speaking. And then, of course, proximity to the plaintiff. Before you move on, so when you say general, are you saying generally something could happen or how do you define general foreseeability? It's more that generally that there could be injury, there could be harm, not generally something or anything could happen. So if I may, to your honor's point, answer with a specific fact from our case, the defendant's Chicago company was instructing via emails on the height of some of the cameras to be one foot below the roof level. Therefore, Canadian and Chicago employees knew that plaintiff or whoever was sent. But unfortunately for Mr. Moore, it was him would be working at heights. The boom lift truck was also taken into consideration and known by all parties that would be utilized in the event that height work from height would have to be done, etc. So specifically, they knew that there would be work at height. It's a construction type situation that injury could occur. So generally speaking, that is the knowledge and foreseeability that we must show. Not specifically that Mr. Moore was going to be run over by a boom lift truck walking back from working on a camera that was at height. Is there a Canadian case that you rely on for your interpretation of general foreseeability? Yes, there is. The general foreseeability is the Bingley case that I was relying on. The general harm, not the manner of the incidents, is what must be reasonably foreseeable. So it's the general harm, not the manner of the incidents, which is the boom lift truck running over the plaintiff. If that answers your honor's question. Thank you. And your honor, Johnson, did that answer your question? Yes. However, it raises another question for me. So wouldn't the question of general foreseeability be more, I guess, factually tied to the incidents that occurred in Canada as opposed to those, I guess, things that occurred in Illinois prior to the incident in Canada, as you argue? If I'm understanding your honor's question correctly, I think it could be tied to Canada, yes, but I don't think it's more tied to Canada than Illinois. In fact, it's tied even more to Illinois in terms of the planning and the scoping and the actual positioning of the cameras that were going to be placed, which was all done within Illinois prior to even going to Canada. It would be, to your honor's point, tied to Canada in that exact moment. Again, down to the more specific foreseeability, which is not what the law says should be taken into consideration. But I don't think they're mutually exclusive. So if there is some of that foreseeability tied to Canada, I posit that it does not absolve Illinois from also having that general foreseeability that would allow the case to proceed under Canadian law. Okay, you may continue. Yes, and did I answer your honor Hyman's questions? Thank you. I know that Justice Hyman wanted to get to the choice of laws. So, I guess- You can preserve five minutes. Oh, yes. So if you want to take a moment or two to kind of wrap up. Yes, your honor. Thank you. So, again, just in response to the choice of laws, I don't believe Judge Sheehan's ruling should have bound Judge Schneider. Even if it did, I believe Judge Schneider failed to test the significant relationship against the factors under the choice of laws that is required by the restatement. We do not posit that Depecage applies in this case because it is a single defendant in Illinois by an Illinois resident who works for an Illinois company. All the planning for the work was done in Illinois. The plaintiff had the relationship and the significant relationship with the defendant in Illinois, which is exactly why the plaintiff was solicited. Which is why the Illinois company was solicited, which is the only reason that these Illinois companies and plaintiff in particular found themselves to be in Canada. And so, because under foresight, we believe that a parent company, if they do get involved to the degree and the detail that they did in this case, then it requires a factual inquiry. Because the defendant here went beyond the norms of parental oversight and they actively and directly participated such that we believe there is significant questions of fact that a trier of fact should be allowed to hear and that the motion for summary judgment would respectfully be reversed by this Honorable Court. Thank you. Okay, thank you. Apelli? Good afternoon. May it please the Court. I'm certainly happy to answer any questions or I can go ahead and just jump in. The panel is obviously very familiar with our case and has done its homework. But I do think it makes sense to take a step back and remember what this case is about. And I think Justice Hyman, a number of your questions reflected this. The case is about a basically a motor vehicle accident that happened in Toronto, Canada. The plaintiff was sent there to do a job for his employer. The contract was between the Illinois Reliable Company and S&C Canada, a Canadian company. Counsel, as you're aware and pointed out, we are aware of the fact. But I'd like for you to address counsel's points that the Illinois contact and involvement began before they got to Canada. Absolutely. And I think if we look at the record, we can't deny that there's been any involvement whatsoever in the entirety of the project. But I think what we certainly can and I'll address those contacts in one second. But what I think we need to focus on is the tort that's actually at issue in the case, which was Mr. Moore being hit by a boom truck lift. And with respect to that incident, S&C parent company in Chicago had nothing to do with that. I apologize. I had my everything on do not disturb disturb me and us, nevertheless. But with respect to your question, Justice Johnson, the contacts with Illinois are very few and far between. With the exception of Mr. Zwijek going to Canada and helping the folks at S&C Canada determine what the kind of request, what were requests for proposal they should put out there, S&C parent company was not involved in the case. The bid came back from Reliable. It was sent to Canada. Canada evaluated the bid. Canada determined that its budget could pay for it. Mr. Williams' affidavit, which is in the record, says Canada had the full authority to decide whether to do the project, to who to contract for the project. And then Canada ultimately made that decision that they were going to contract with Reliable. The fact that S&C parent had used Reliable previously really amounts to a recommendation of a potential vendor. And that contact is extremely detached from the incident in this case. Certainly, even plaintiff admitted no one from S&C parent was on site during this project. No one from S&C parent directed them to take the boom lift on a public roadway. No one from S&C parent even knew that that was happening. And certainly no one from S&C parent directed plaintiff to walk in front of the boom lift going in the opposite direction of traffic without a spotter. When we look at the factors in Townsend, don't we have to look there at the restatement in Townsend in making this decision? Yes, I think we absolutely do. And I think Townsend makes clear that the place of injury is going to be the default choice of law. And the place of injury is undoubtedly Canada. But what Townsend says is if Illinois has a more or greater relationship to the incident, then Illinois law should apply. Illinois law certainly doesn't have a more or greater relationship. Like I said, the occurrence undoubtedly occurred in Toronto, Canada. It involved people who were in Canada, including plaintiff, who was in Canada at the time. His injuries were caused by the motor vehicle accident in Canada. And so simply adding an Illinois defendant who doesn't have underlying liability and wasn't involved in the incident doesn't ultimately change the choice of law analysis that one would do for a motor vehicle incident happening in Canada. What would you say to the fact that if I understand the appellant's argument, they are arguing that Judge Sheehan's decision with regard to Canadian law was applied to the Canadian defendant. And now, except their argument, it was only suggested it would also apply to the Illinois defendant. But did Judge Schneider have to redo it? What is your response back and forth with regard to Judge Schneider's decision on that issue? So Judge Schneider's decision on the conflict of laws issue was correct. But even if she was supposed to go through a new analysis and look at it differently, I think, look at it differently with respect to my client. I don't think we would have had a different result. So I think she was correct. I think the first question, she didn't do it. So did she have to do it? Why didn't she have to do it? You're saying she did. They're saying that she should have. So I want to hear from you why you think they. I don't think she had to redo it because it was done correctly the first time. Oh, but she didn't know that. She didn't look at it. She didn't analyze it. She just accepted it. Well, but that's presupposing that you would have a different analysis for the exact same incident. She just accepted it. It was that appropriate. I mean, what's your argument as to why it would be appropriate for her to just accept that? I think it was appropriate for her to just accept it because the analysis was correct. But even supposing that it wasn't or that she was supposed to redo the analysis, we would have the same result. Because with respect to the issue in this case, whether we look at it under Illinois law or under Ontario law, we end up with the same result with respect to my client. And that's exactly what we put forth in our motion for summary judgment and again before this court. And before that, you know, in our motion for summary judgment, we started with Judge Sheehan said that Canadian law is going to apply. We think that is the correct analysis because this incident took place in Ontario, Canada. However, you know, and so therefore under Canadian law, we don't meet the requirements of foreseeability and proximity that would be required to hold a parent liable for the torts of a subsidiary. But even if we look at it under Illinois law, we still we still win that we they cannot meet and do not meet the test in foresight, which is a very narrow exception to the general rule that a parent is not going to be responsible for the torts of its subsidiary. It's a policy and we should look at the policy and get away from the specifics. I don't I don't know that the policy would be any different. The policy that set forth in foresight is not that a parent should be that has any connection whatsoever to any operations of its subsidiary should be responsible when one of those subsidiaries employees is involved in a motor vehicle accident. The client counsel counsel, you're saying that, you know, the subsidiary was, you know, responsible for this tort or, you know, whatever happened there. But isn't it true that your client wanted these cameras? Your client's the one that organized everything. The cameras were going to benefit your client because you'd be able to see what was happening there in Canada. So then to, you know, wash your hands and say, oh, but wait, you know, that's our subsidiary. They signed the contract. We have nothing to do with it. That's a little disingenuous, isn't it? No, Your Honor, I don't think it is at all. I think that if we look at the record and what the record actually shows about this project, Mr. Higgins from Canada said that this was for the Canadian security. Mr. Williams from my client, S&C Electric Company said Canada could do the project or not do the project. The purpose of the project was to provide security for the employees in Canada. It was not the monitoring project that plaintiff has described and that the record does not support. There is not. That's not why this was done. S&C is not Big Brother and trying to monitor via cameras. This is to make sure that our employees who are, you know, working on a plant and dealing with equipment where people could be injured, where there could be theft, that they are secure and safe in their practices. Yes. I'm sorry. How do you pronounce your last name? Doring. It's Doring. So if I understand the record correctly, the security system would have been set up so that the folks in Illinois could observe the video or the feed or stream, whatever you want to call it, of what's happening in Canada, correct? That was one aspect of it. And, you know, your position is, well, you know, the evidence, you know, the Canadian folks testified or the evidence was that they were the final decision makers, but couldn't a fact finder infer that, no, that's not true. The folks in Illinois were really driving this. And the fact that you may maintain a separate form, generally that might work, but when you have somebody from Illinois who's referring, and then I think if I recall correctly, even went up to the Canadian facility to, you know, do some field work or groundwork, you know, a fact finder might say, yeah, I think really the parent was driving this. So why couldn't a fact finder draw that inference? I don't think a fact finder could draw that inference because even if it was considered that S&C, you know, as a parent company wanted its subsidiaries to upgrade their security systems, I think that that question is removed, far removed, such that it wouldn't be foreseeable that someone would be injured on a public roadway using a boom lift. I think that's where the disconnect is. So even if there were evidence in the record that supported what plaintiff has alleged that S&C parent company controlled this project, there isn't. But even if there were, I still think that that does not meet what Forsyth required. In Forsyth, the parent company cut out the budget for security, and as a result, someone was injured. Basically, the security system that they expected to have that was designed to protect people. The camera project in Canada wasn't, first of all, S&C didn't, there was no budgetary relationship, but it also didn't, was not, the purpose of it wasn't to protect a subcontractor on its premises. So, I mean, I think we're still very detached from the kind of, or is distinguished from the kind of oversight that Forsyth said, yeah, you know what, we think that means you're participating in this, and you're participating in the actual tort. Here, what was our participation in the actual tort? I think the kind of general foreseeability that we heard from plaintiff's counsel, I don't think that's what that's supposed to mean. Because if it were, then anytime somebody is on their way to something, and they get hit by a bus, then what the person who said, I suggest you go there is responsible. I mean, that doesn't make a lot of sense. No, but anything that you need to do in order to carry out the project. So in this case, you're going to install these cameras. So if installing the cameras is, or the additional security is using the boom, getting on a ladder, anything that's reasonably required in carrying out the purpose or the scope of work of this contract would be considered foreseeable. Isn't that correct? Respectfully, no. And I do want to make one clarification. Reliable was not hired and did not install the cameras. The cameras were already installed. Mr. Moore was up there to make sure the software was working and that the feeds were working. So, no, I don't think it's foreseeable that even that they'd be using a boom lift necessarily. Because his job was not to install the cameras. But even if it's foreseeable that you're going to use a boom lift, I don't think it's foreseeable that someone's going to make a decision that we're going to drive it on a public roadway in the opposite direction of traffic without a spotter and have someone walk in front of it. So I think that's where we get too tenuous and there's not that foreseeability or approximate cause from anything that S&C Parent did. Because otherwise, I think we kind of get back to my being hit by a bus. Then it was, you know, if we know he has to go to the facility, if he's hit by a bus on the way to the facility, then that was foreseeable. I don't think that's right. I think that that's much too remote from the actual conduct that we're talking about by my client for that to be foreseeable. I'm happy to address questions about the conflicts of laws. As I did mention, you know, we do think that Judge Schneider was correct in adopting Judge Sheehan's analysis. The analysis was done at a time when all parties were still in the case. And I think the fact that S&C Canada was dismissed for lack of personal jurisdiction, I don't think would change the underlying analysis of the choice of law for this case. But nevertheless, if we look at this particular issue of parent liability, I'm not sure there is a conflict of laws. I think Canada may look at it slightly differently, but I think the result is the same. And this court can affirm for any reason. And so whether you determine that it should be Illinois law or Canada law, either way, Judge Schneider's decision that the parent company should not be held liable for torts occurring at its subsidiary is correct. That is the general rule and plaintiff has not shown any evidence that would suggest the very narrow exceptions to that general rule, both under Ontario law and under Illinois law, that any of those exceptions are met in this case. And for that reason, we ask that you affirm the judgment below and affirm the summary judgment. Thank you. Thank you. Are there any more questions from the panel? Okay, thank you very much. Appellant's counsel, you have five minutes in reserve. You can unmute yourself, please. I apologize. Thank you, Your Honor. In response to counsel's questions or counsel's commentary, I think it proves how many questions of material fact there are here and why it was such a drastic measure for the circuit court to grant summary judgment, considering the pleadings and the depositions, etc. did show that there was multitude of material fact questions. The defense always couches their arguments, and I understand their perspective, that they were just a parent company. They were just a consultant. Plaintiff has a very different opinion based on the record, where we are saying that Mr. Zwiejack is the one from Illinois who worked with James Austin for years, according to Mr. Austin's testimony here in Chicago. Mr. Moore also said that he worked with the Illinois company for years here in Chicago and did work in other states. The purpose of the cameras were so that S&C Camera could monitor S&C Canada and have access to everything that was happening on the site. Illinois employees from defendant company traveled to Canada to scope and to plan this job. Plaintiff's position is that it is a very different analysis than just the actual incident and what happened at the moment of impact. Counsel started by saying that this is a motor vehicle case at its core, but it's not for the Illinois case. At the Illinois case, at its core, it's a construction negligence case, which is going to hinge on the control and whether we can prove it admittedly, but hopefully to a jury as a trier of fact. It's not just a motor vehicle case for the Illinois case. What it is, is a parent company who did in fact get involved in the degree and detail that Forsyth discusses such that they were dictating through those emails that we saw in the record where the Illinois company was guiding the Canadian company that the positions can be afoot from the roofline. What are the questions of fact remaining that are specific to the accident that occurred? Well, our argument is that the defendant Illinois company is a proximate cause because of all the things that led up to it. I understand that, but let's focus on the actual use of the boon and rolling over the foot. Is any of that at issue? Well, it's an issue to the extent that we believe the defendant Illinois company breached their duty of care to the plaintiff. That was approximate cause. For instance, when the reliable company provided the paperwork with their bid that was solicited by the Illinois company. It specifically discussed providing a safe place with which to perform the maintenance and there was portions in the proposal by reliable and Illinois company to provide a lift if necessary. So there were definitely things that gave notice to the Illinois company that there were going to be things done that could potentially lead to an injury. The fact that he was run over by the boon is not an issue that both sides agree that happened. So I think that then the problem is that the Illinois company was so involved to such a degree, but then didn't carry out their duty of providing a safe place to work. What were they supposed to do? I don't understand. They weren't there at the time. You just said, yes, it's the accident that we're looking at. And they had nothing to do with it. Absolutely nothing. It happened in Canada. The witnesses were in Canada. The driver of the trucks in Canada. And the police report was made in Canada. And how that could be foreseeable, as we've discussed, is something that, I don't know, to my way of thinking, you haven't addressed other than, say, general generalities. Well, to your honor's point, and I think it also is in response to an argument made by counsel, is that if this were actually an auto crash where the parent company in Illinois had no involvement with what the Canadian company was doing to upgrade their system, and this incident happened to occur in the exact manner that it did here, I wouldn't have brought the suit because there wouldn't have been that connection to Illinois, such that liability could attach to the defendant company here. So I think to your honor's point, if that were the case, if it strictly were Canada taking on this undertaking on their own, planning it, soliciting, finding a company, which I don't believe would have been an Illinois company, but for the Illinois parent company, then that is correct. I don't believe I would be able to sustain a plan. But you did bring this case first, if I'm not mistaken, against the Canadian company, and then you added, or is it the other way around? No, I believe we brought it against both here together initially. It was an amended complaint. Somebody was added. There was a first complaint, and then there was a second complaint. Right. But we eliminated the Canadian defendant due to her honor, Judge Sheehan's order. So the case only remained against the Chicago company. So that's our point, that that's why it is foreseeable because of the degree of the participation that the parent company took is why we do believe that it was foreseeable and that they should be involved. If it really were just an auto crash that may happen on their daughter companies throughout the world, then no, I don't think automatically that would mean that the parent, and that's exactly the situation that counsel is suggesting that this is. What appellant is saying is that it does go further than that, and the questions of fact are, in fact, what breach was there as a result of the duty that this Illinois company took on when they became so involved as to be deemed an eccentric under the norms of parental oversight and supervision of a subsidiary like Forsyth talks about. There's that confused intermingling of facts that should be determined by a trier of fact as opposed to as a matter of law. So it would be all of those things that we would put forth to a jury, all of the information from the emails on where the cameras were to be located. What does that have to do with the accident? Well, because Mr. Moore was going to put the cameras to point in a particular direction, and the very last thing he was going to do before he left Canada was to call back to Chicago to make sure that all of the views were sufficient and correct in the Illinois company's eyes before he would leave Canada to come back to his home state. So that has everything to do, in our opinion, and maybe a jury would not agree with us. What we're requesting is the opportunity to present that because it's that reason from the Illinois company's action in this case that the plaintiff was even there and at height. And because the defendant was on notice that that type of machinery would be used based on the paperwork that plaintiffs. He wasn't even at height. He was on the ground. He was on the road that there was no way that the Illinois company would have known it was going to be a public road and that this was going to happen. That is correct, Your Honor. It was not at height at the time, but the reason that the machinery needed to be utilized was to get the plaintiff at height at particular times. But then I think to Your Honor's point, it goes back to that very narrow view, and I believe that the case law supports a broader view. And in fact, the Townsend case that Your Honor Justice Hyman mentioned goes through actually in terms of the conflict of laws issue, at least the fact that it is no longer the restatements position that the inquiry begins and ends at where the incident occurred and where the conduct occurred. That it could lead to results that would not be good for the forum state as I don't think it would be good for here in Illinois. We would have an Illinois defendant, an Illinois plaintiff who works for an Illinois company working on a project that was born in Illinois, planned in Illinois, partially executed by getting a company to go out to Canada. A plaintiff who's injured who will be seeking care and treatment in Illinois who received all their treatment in Illinois, and then to impose upon a court. I think one of the cases in Townsend talked about, although in the context of determining whether there's a conflict, but before the court entangles itself in the messy issues of conflicts of laws. If viewed in light of the principles under the section six of the restatement, it appears, or at least the plaintiff's argument would be that Illinois has a much greater policy reason for wanting the laws of this state to be applied to its citizens who get injured under these circumstances. And the policies underlying particular fields, such as tort law in Illinois plaintiff or the courts have established no caps on damages, which would be imposed in Canada because Canada has a different view than Illinois courts. And I believe that it is good for Illinois policy under the section six of restatement to have those policy issues being utilized. Canada has no reason to deter anyone or to have any reason to have their laws applied in this case, when this plaintiff would be in Illinois. So the caps that the Canadian courts have put in place are to put forth their policies, which they have determined, which are contrary to what my understanding of the Illinois policies would be, which is why under that analysis that Judge Schneider did not engage in, and to my understanding should have under the law, if she was to at all, would be why Illinois courts would have a very strong policy reason for wanting Illinois applied here. I think at the end of the day, this is not just a motor vehicle crash. This is a construction negligence count, which is what we have remaining about, oh, I'm sorry, Judge. Okay, you can make your conclusion now. Your time has expired. Yes, Your Honor. As I started, I believe this is a very drastic measure that the circuit court utilized. I believe that even today, just with the arguments, it shows that there are two sides to this controversy that have many issues of material fact, and a jury may not agree with plaintiff, but we are requesting the opportunity to have a trier of fact, because as a matter of law, we believe that this should not have been dismissed. Thank you very much for Your Honor's time. Thank you very much. Thank you both for your zealous advocacy today, and you have certainly given us some additional matters to consider. We will take your arguments under advisement and issue a opinion forthwith. Thank you so much. Be well. Thank you very much. Thank you, Your Honor.